Filed 3/2/22  P. v. Rembert CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059690 |
| v. | (Super. Ct. No. C-94692) |
| SCOTT EARL REMBERT, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Gary S. Paer, Judge.  Reversed and remanded for further proceedings.

Dawn S. Mortazavi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Jennifer B. Truong, Deputy Attorneys General for Plaintiff and Respondent.

\*          \*          \*

Scott Earl Rembert appeals from the trial court's postjudgment order denying his petition for resentencing pursuant to Penal Code section 1170.95. The court concluded a person convicted of murder with a special circumstance before the Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), is barred from pursuing resentencing. We disagree. Because the record of conviction does not establish Rembert's ineligibility for resentencing as a matter of law, we reverse the postjudgment order denying the petition and remand the matter with directions to issue an order to show cause (OSC) and to proceed in accordance with Penal Code section 1170.95, subdivision (d).

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Underlying Crime*

In 1995, a jury found Rembert guilty of first degree murder and found true special circumstances allegations that the murder occurred during the commission or attempted commission of robbery and kidnapping (Pen. Code, §§ 187, 190.2, subds. (a)(17(i) & (ii); all further statutory references are to the Penal Code, unless otherwise stated). We affirmed the conviction in an unpublished opinion. (*People v. Rembert* (May 28, 1997, G018055) [nonpub. opn.] (*Rembert I*).)

As recounted in our prior opinion, Rembert and two codefendants, Shaun Burney and Allen Burnett, robbed and kidnapped the victim. "The three discussed what they should do with [the victim]. Burney expressed a fear that the victim had seen their faces and would tell the police. Burnett wanted only to leave him in some remote area, like Carbon Canyon. Burney demanded that they kill him, which Burnett refused to do. Burney ended the discussion by announcing he would do it. Lifting the trunk lid, he aimed Rembert's gun at [the victim]'s head and fired a single shot at point blank range. It pierced [the victim]'s upraised hand before entering his skull, causing massive blood loss and his death. The three fled on foot." (*Rembert I, supra*, at pp. 3-4.)

2

In an interview with a police officer, Rembert "admitted he was present at the shooting but did not participate. He said the idea to 'jack' the victim was Burney's and Burnett's, but that he was the one who initially carried the gun from the apartment. Once the other two had moved the victim into the trunk at gunpoint, Rembert climbed into the car and went along for the ride. He saw Burnett empty the glove compartment and the man's wallet, drive around after getting a shotgun and argue with Burney as to who was to shoot the victim. After they returned the shotgun, Rembert reloaded the gun and at some point gave it to Burney who shot the victim. After the three left the car, Burney hid the gun near some railroad tracks." (*Rembert I, supra*, at p. 5, fn. omitted.)

"At trial, Rembert testified that he was living with Burnett at the time of this incident. Two months before, some gang members severely beat Burnett, and both men were afraid of further gang violence. When Burney, a friend of both Burnett and Rembert, suggested he come with him to steal a stereo, Rembert agreed to go along but not necessarily participate. Burnett insisted on coming too, although Rembert felt he was too drunk. The three wore surgical gloves, and Rembert pocketed a gun for the trip at Burnett's request. When they failed to find the car they were going to burglarize, Burnett and Burney suggested they rob the young man in the nearby car. Rembert declined to do it, but Burney demanded the gun from him, and he handed it over. Once they had overpowered [the victim], Rembert came along in the car.

"They drove to a friend's house where they got a shotgun to 'blast' some gang members. They also drove to Burnett's former girlfriend's house where Rembert heard some gunshots. Rembert never attempted to release [the victim] or help him, as he was afraid of Burnett and Burney who he thought were crazy. When Burney began talking about killing the victim, Rembert was in total disbelief. He leapt from the car and began running as soon as Burney said he would do it." (*Rembert I, supra*, at p. 5.)

3

B. *Resentencing Petition*

On July 1, 2019, Rembert filed a petition for resentencing under section 1170.95, seeking to vacate his murder conviction. The District Attorney filed a response and a supplemental response, objecting to resentencing on multiple grounds. Appointed counsel filed a supplemental reply.

The trial court denied the petition without issuing an OSC. The court held Rembert had not made a prima facie showing he would be entitled to relief since the jury had made true findings on special circumstances that demonstrated the jury necessarily determined "(1) the petitioner was the actual killer[,] (2) the petitioner acted with the intent to kill or (3) the petitioner was a major participant in the underlying felony and acted with reckless indifference to human life. Because any finding would allow Petitioner to be convicted of first- or second-degree murder notwithstanding the changes to section 188 and 189[,] made effective January 1, 2019, Petitioner is not eligible for relief from his murder conviction under section 1170.95 P.C."

II

DISCUSSION

In 2018, the Legislature enacted Senate Bill No. 1437 (Sen. Bill 1437), which, among other things, established a procedure allowing an individual convicted of felony murder to petition the trial court to vacate the conviction and be resentenced on any remaining counts if he or she could not be convicted of felony murder because of changes to the definition of the crime. (§ 1170.95, subd. (a)(3).) Sen Bill 1437 also amended the definition of felony murder so that an accomplice to an underlying felony who was not the actual killer could not be convicted of felony murder unless they aided in the murder with the intent to kill or were "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of section 190.2." (§ 189, subd. (e)(3).) Section 190.2, subdivision (d), provides that "every person, not the actual killer, who, with reckless indifference to human life and as a major

4

participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true. . . ."  Kidnapping and robbery are among the enumerated special circumstances.  (§ 190.2, subd. (a)(17) (A) & (B).)

The factors a fact finder should consider in assessing a felony-murder special-circumstance finding were clarified in *Banks*, *supra*, 61 Cal.4th 788, and *Clark*, *supra*, 63 Cal.4th 522, nearly two decades after Rembert's conviction.  In *Banks*, the Supreme Court identified the factors courts should consider in determining whether a defendant was a "major participant" under section 190.2, subdivision (d):  "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?"  (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.)

In *Clark*, the high court set forth considerations relevant to determining whether a defendant had acted with reckless indifference to human life, including:  the defendant's knowledge and use of weapons; the number of weapons; physical presence at the crime scene; opportunities to restrain the crime or aid the victim; duration and location of the crime; and defendant's knowledge of a cohort's likelihood of killing; and defendant's effort to minimize the risk of violence during the crime.  (*Clark*, *supra*, 63 Cal.4th at pp. 618-622.)

5

As noted, the trial court found Rembert ineligible for resentencing relief under section 1170.95 based solely on the jury's felony-murder special-circumstance findings. Although this position has been upheld in several court of appeal decisions, we have rejected it as "'as contrary to the language and intent of section 1170.95.'" (See *People v. Gonzalez* (2021) 65 Cal.App.5th 420, review granted August 18, 2021, S269792 (*Gonzalez*), quoting *People v. Harris* (2021) 60 Cal.App.5th 939, 956, review granted April 28, 2021, S267802.) Because we believe that opinion correctly states the law, we reach the same conclusion: a jury's true finding on a special circumstance does not automatically preclude resentencing relief under section 1170.95. (*Gonzalez*, *supra*, 65 Cal.App.5th at p. 431.)

The Attorney General contends we may affirm the trial court's denial order because the record of conviction establishes Rembert's actions met the *Banks* and *Clark* standards, rendering him ineligible for section 1170.95 relief as a matter of law. In *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), the Supreme Court held that "the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief." (*Id.* at p. 971.) The high court, however, cautioned that "the prima facie inquiry under subdivision (c) is limited. . . . '"[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing,'" unless the record contains facts refuting the allegations made in the petition. (*Ibid.*, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 978.) Stated differently, "at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, 11 Cal.5th at p. 974.)

6

Here, facts relevant to the Supreme Court's decisions in *Banks* and *Clark*, were disputed at trial and not clearly resolved by the jury's findings. Specifically, as recounted in the appellate opinion affirming his conviction, Rembert testified at trial that he declined to rob the victim, and when one of his cohorts "began talking about killing the victim, Rembert was in total disbelief. He leapt from the car and began running as soon as Burney said he would do it." (*Rembert I, supra*, at p. 5.) The trial court could not properly resolve these facts at the prima facie stage. Accordingly, we cannot affirm the trial court's denial order based on the record before us.

## III

### DISPOSITION

The postjudgment order denying Rembert's section 1170.95 petition is reversed, and the matter remanded with directions to issue an OSC and to proceed in accordance with section 1170.95, subdivision (d).


ZELON, J.*

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7